UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 15-289 |
| ANDRE DOMINICK, ET AL. | SECTION "N" (3) |

ORDER

On January 13 and 27, 2016, Becnel's Ex Parte Motion for Issuance of Subpoena *Duces Tecum* and Incorporated Memorandum in Support [Doc. #45], the Government's Motion for a Protective Order [Doc. #51], and the Government's Motion to Quash Subpoena *Duces Tecum* Issued to the St. Bernard Parish Sheriff's Office and for Disclosure of Subpoena *Duces Tecum* [Doc. #61] came on for oral hearing before the undersigned. Present were Chandra Menon on behalf of the government and Alan Tusa, Christen Chapman, Guy Wall, Michael Ginart, Claude Kelly, and Mary Gaber on behalf of various defendants. After the oral hearing, the Court took the motions under advisement. Having reviewed the motions, the oppositions, and the case law, the Court rules as follows.

**I.      Background**

The indictment alleges as follows. Defendants Andre Dominick, Timothy Williams, Debra Becnel, and Lisa Vaccarella were employed as correctional officers at the St. Bernard Parish Prison

("SBPP"). Nimali Henry was a pre-trial detainee in the custody of SBPP from March 21, 2014 through April 1, 2014. Henry suffered from serious medical conditions for which she was under a physician's care. While incarcerated, Henry did not receive the medication required for her medical conditions, no doctor evaluated her, and she was not taken to a hospital for treatment. On April 1, 2014, SBPP officers noticed Henry unresponsive and face down in her cell. They called for emergency services, but Henry died in the isolated cell that same date.

The government then charged all four defendants with deprivation of rights under color of state law in violation of 18 U.S.C. § 242 for deliberate indifference to Henry's medical needs. The government also charged defendants under 18 U.S.C. § 1001(a)(2) for making false statements to a federal agency in that they told the FBI agents that Henry had never told them that she had serious medical needs and no inmate in Dorm D1 ever told them that Henry had serious medical needs, all of which is alleged to be untrue.

## II. Becnel's Ex Parte Motion for Issuance of Subpoena *Duces Tecum* and Incorporated Memorandum in Support

Becnel seeks the issuance of subpoenas *duces tecum* to River Oaks Hospital, Ochsner Baptist Medical Center, Dr. Craig Lotterman, and Walgreen Louisiana Co., Inc. The subpoenas seek the medical records of Henry. Becnel argues that Henry's medical conditions and history are material to the case. Becnel is indigent and has court-appointed counsel and seeks leave of court under Federal Rule of Criminal Procedure 17(b) to have the fees paid without cost.

Becnel seeks production of the documents in advance of trial under Rule 17(c)(1). She maintains that she satisfies all four requirements of *United States v. Nixon*, 418 U.S. 683, 699 (1974): Henry's medical and prescription records are relevant evidence of her medical conditions and medical history; Becnel has no way to obtain medical records from these third parties except

through subpoenas; the requested records are necessary to properly prepare for trial; failure to obtain pre-trial inspection would delay trial because the documents are likely to be complicated and voluminous and may require review by an expert; and this good faith request for medical and prescription records is not intended as a "general fishing expedition," as the subpoenas are directed to parties which Henry identified as having been involved in her medical care in documents already produced by the government.

The government contends that Becnel's motion will be rendered moot in the near future through the discovery process. It maintains that "it appears" that the documents will be produced through the discovery process well in advance of trial.

The government notes that it has produced well over 1,400 documents and video footage to Becnel. The government believes that it has the documents that Becnel seeks in its possession. It discussed a limited protective order with defendants, and only one – now two – objected. The discussions are on-going. It plans to file a motion for a limited protective order in the near future, and, after the Court's ruling, it will produce the documents.

The government thus maintains that Becnel's motion is premature. Citing case law, it contends that Becnel can not show that the materials are not otherwise procurable because it has them and will produce them after the entry of a protective order.

In her reply, Becnel argues that she should not have to rely on the government's reassurances. She maintains that if the subpoenas do not issue, she will not know whether the government produced to her all of Henry's medial records, as opposed to what the government simply wants to produce. She notes that the government has not unequivocally stated that it will provide to her all of the documents that she seeks through the subpoenas.

Federal Rule of Criminal Procedure 17(c) governs motions for subpoenas *duces tecum* and provides simply that:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c).

The party seeking a Rule 17(c) subpoena must show that the materials sought are relevant, that they are admissible, and that they are requested with adequate specificity. *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) (citing *United States v. Nixon*, 418 U.S. 683, 697-702 (1974)). A Rule 17(c) subpoena is not a discovery device nor does it provide a means of discovery beyond the discovery provided for in Rule 16. *Nixon*, 418 U.S. at 700; *Arditti*, 955 F.2d at 345 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). "The specificity and relevance elements require more than the title of a document and conjecture as to its contents." *Arditti*, 955 F.2d at 345. If the moving party can not reasonably specify the information contained or believed to be contained in the documents sought, but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused. *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991). The subpoena must be sought in good faith and not as a "fishing expedition." *Arditti*, 955 F.2d at 347. Requesting entire files instead of specific documents is indicative of a fishing expedition. *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984).

The Court finds that Becnel has satisfied the requirements of *Nixon*. This Court can not fathom documents more relevant to the preparation of her defense than Henry's medical records. It is the whole underlying factual basis for the charges in the indictment. Moreover, the records are

most likely admissible, and Becnel has requested them with specificity. This is no fishing expedition. When a party contends that a defendant has been deliberately indifferent to its or another's medical care, the underlying medical records are ultimately necessary to prove – ot to negate – the medical care that was allegedly necessary for the alleged underlying medical condition. Unless the government can produce to the Court a verified affidavit that it is producing all of Henry's medical documents from these four sources, this Court grants the motion. However, and as outlined below, this production is subject to this Court's ruling on the government's motion for a protective order.

### III.    Government's Motion for a Protective Order

Only Dominick and now Becnel oppose this motion; the other two defendants do not. The government intends to provide discovery to defendants that contain medical and personal identifying information. The reasons are in an *ex parte* letter to the Court under Rule 16(d)(1). The government maintains that the limits in the proposed protective order are narrow and should not be burdensome on defendants. The government then lists the five paragraphs that comprise the proposed protective order, none of which is unusual.

Becnel opposes the motion for any ground outlined in the government's Rule 16(d)(1) letter as *ex parte* proceedings are disfavored under the law, and she has no way of knowing what reasons the government gave the Court.[1] She notes that the protective order only prohibits defendants from disseminating the information, not the government.

She also notes that medical information related to Henry has already been given to the public. And she notes that a civil suit filed in this Court outline Henry's health problems. Becnel

---

[1]    Dominick adopts Becnel's opposition in full.

has no objection to a protective order to cover the medical records of living persons, but Henry is deceased.

Becnel contends that the government has not shown good cause for a protective order as it has articulated no specific injury that may occur should it produce the documents to defendants without a protective order. And she notes that the protective order appears to limit defense counsel's ability to discuss Henry's medical records with witnesses other than experts. This, she maintains, would severely limit her ability to prepare a defense.

Becnel contends that the public has a right to access these records as Henry's medical condition forms the basis of the lawsuit. She argues that the government has shown no compelling countervailing interest that would overcome the presumption of access by the public. Citing a plethora of case law, she notes that courts weigh the right of access by the public more heavily when the person is deceased.

Lastly, she contends that a protective order is not necessary to ensure that the parties comply with Rule 49.1(a), which already requires that certain personal identifying information be redacted.

The Court denies the motion with regard to Henry's medical records. The government has not shown that the medical records of a deceased person outweigh the public's right to access judicial records. *See Samuel Gruber Educ. Project v. U.S. Dep't of Justice*, 24 F. Supp. 2d 1, 13 (D.D.C. Mar. 17, 1998) (finding that it is generally accepted that when person is deceased his privacy interest no longer exists); *McDonnell v. United States*, 4 F.3d 1227, 1254 (3d Cir. 1993) (holding that when individual is deceased, government must justify withholding of medical records by asserting some privacy interest other than individual's interest in keeping personal information from public view); *Am. Civil Liberties Union of Miss. v. Fordice*, 969 F. Supp. 403, 410 (S.D. Miss.

May 31, 1994) (finding that the right of public is weighted more heavily in cases of deceased victims, "who can suffer no embarrassment," even assuming privacy rights continue after death). There is certainly no reason to seal Henry's medical records here, and the government has failed to show a specific and particularized harm should it produce the documents without a protective order. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing. *United States v. Jones*, No. 3:06-CR-149, 2007 WL 4404682, *1 (E.D. Tenn. Dec. 13, 2007) (citations omitted). "Any doubt should be resolved in favor of disclosure." *United States v. Simpson*, Crim. No. 3:09-CR-249, 2010 WL 4282173, *1 (N.D. Tex. Oct. 28, 2010). This is especially true here when Henry's estate has brought a wrongful death lawsuit in which they have disclosed many of her medical records already.

With regard to any other information – the majority of which appears to be personal information of law enforcement officers and the medical conditions of others not involved in this lawsuit – the Court grants the motion. No party specifically opposes a protective order to seal this information regarding living persons. Such information is routinely sealed to protect the officers, their families, and the rights of other to have their confidential medical information remain sealed. Said information shall be viewed only by the parties to this lawsuit, their counsel and experts, and any other person necessary to the preparation of their claim or defense, and it shall not be disseminated outside this the confines of this lawsuit. The government shall revise its proposed protective order – if necessary – to reflect this Court's Order.

**IV.   Government's Motion to Quash Subpoena *Duces Tecum* Issued to the St. Bernard Parish Sheriff's Office and for Disclosure of Subpoena *Duces Tecum***

The government argues that it has produced almost all of the materials that it has obtained from the SBPSO. Among the materials that it has not yet produced are records identifying potential

7

non-SBPP-officer witnesses and the statements of potential non-SBPP-officer witnesses obtained through the SBPSO's criminal investigation. The government plans to disclose this information at a time consistent with its obligations under Rule 26.2 and the Jencks Act. Williams, Vacarella, and Becnel issued SDTs to the SBPSO that seek the aforementioned documents and their production directly to defense counsel. The government informed the SBPSO that it would seek to quash the SDTs, and the SBPSO has not complied with them.

Rule 17(c) authorizes issuance of subpoenas for documents and other tangible items and contains a provision that allows such subpoenas to be returnable before trial. Fed. R. Crim. P. 17(c). Rule 17(h) prohibits use of such subpoenas to obtain statements of witnesses or prospective witnesses. Fed. R. Crim. P. 17(h). Rule 17(f) authorizes issuance of a deposition subpoena only when the court has ordered a deposition. Fed. R. Crim. P. 17(f). Courts have emphasized that Rule 17 is not a discovery device. *See e.g., United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) (holding that Rule 17 "is not intended to provide an additional means of discovery").

In order to secure issuance of an SDT returnable prior to trial, the party seeking the subpoena must show the following in accordance with the Supreme Court's holding in *United States v. Nixon*: (1) the materials are evidentiary and relevant; (2) they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay trial; (4) the application is made in good faith and is not intended as a general "fishing expedition." *United States v. Nixon*, 418 U.S. 683, 669 (1974).

Citing this law, the government contends that only a judge may authorize pre-trial production of materials in a criminal action. It also maintains that it follows that a party has no authority to

8

make materials returnable to the party's attorney. Rule 17(c) provides that the court *may* order the witness to produce the designated items in court before trial.

The government asks the Court to quash the subpoenas on the ground that defendants did not obtain permission from the Court to issue them for pre-trial production. It notes that no defendant even attempted to comply with *Nixon*. It also asks the Court to quash the subpoenas on the ground that they require that the documents be made returnable to defendants' counsel. It argues that defendants can not demonstrate that the documents are otherwise unprocurable reasonably in advance of trial by exercise of due diligence. The government will abide by its discovery obligations.

To the extent that the SDTs seek witness statements, the government contends that they run afoul of Rule 17(h). And, the government maintains, Vacarella's subpoena seeks a deposition at her counsel's law office, and this Court has ordered no deposition.

Lastly, the government asks the Court to order the parties to disclose to each other and the Court any other subpoena that they may have served and about which the government is unaware.

Williams first argues that the government has no standing to move to quash the subpoena.[2] Citing case law from this district, Williams notes that courts routinely hold that the government has no standing to move to quash a third-party subpoena in a criminal action. He maintains that the government has made no argument that the SDTs will infringe on a claim of privilege, or will result in undue delay, harassment, or prejudicial over-emphasis on witness credibility.

Williams argues that he did not need to obtain prior authorization from the Court to issue the SDTs. He notes that the government relies only on comparing subsections of Rule 17 and non-

---

[2] Vaccarella adopts in full both Williams' and Becnel's oppositions.

binding case law to support its argument. Citing Rule 17(c)(3), Williams contends that "a subpoena requiring the production of personal or confidential information about a victim may be served on a third party *only* by court order." (emphasis added). Because that subsection contains the word "only," he maintains, it would be superfluous if the Court read "only" into the other subsections. Citing his own case law, Williams notes that many courts have held that no prior authorization by the Court is needed. And, Williams argues, Rule 17 only requires that a court *may* require that the documents be returnable to the Court. It is not the mandatory *shall*.

With regard to the witness statements, Williams maintains that Rules 17 and 26.2 apply only to statements in the possession of the government, not those in the possession of third parties. And, he notes, numerous courts have held that Rule 16 does not limit disclosure of local or state reports prepared before the government's involvement in a case.

Williams contends that the government concedes that it has not produced all of the documents. He maintains that he is entitled to receive these documents directly from the third party.

Becnel notes that her subpoena required production of the documents on the day of trial. Thus, she maintains, no prior court authorization was necessary. Becnel, like Williams, notes that the SBPSO would have voluntarily produced the documents to her had the government not intervened and asked it not to do so.

Becnel also attests that she has issued no other SDTs.

In its reply, the government notes that it need no standing here to move to quash the subpoena because courts have consistently held that regardless of the government's standing, there is an independent obligation on the courts to determine that Rule 17 subpoenas comply with the *Nixon* factors. It also maintains, in the alternative, that it has standing because it has an interest in

the enforcement of Rule 17, in that after the Court may permit the parties to produce the materials in court, all parties are allowed to review the documents.

It also contends that it can not respond to Williams' memorandum because it was filed under seal. The government argues that courts have disagreed as to whether these memoranda may be filed under seal.

As noted above, Federal Rule of Criminal Procedure 17(c) governs motions for subpoenas *duces tecum* and provides simply that:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c).

The party seeking a Rule 17(c) subpoena must show that the materials sought are relevant, that they are admissible, and that they are requested with adequate specificity. *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) (citing *United States v. Nixon*, 418 U.S. 683, 697-702 (1974)). A Rule 17(c) subpoena is not a discovery device nor does it provide a means of discovery beyond the discovery provided for in Rule 16. *Nixon*, 418 U.S. at 700; *Arditti*, 955 F.2d at 345 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). "The specificity and relevance elements require more than the title of a document and conjecture as to its contents." *Arditti*, 955 F.2d at 345. If the moving party can not reasonably specify the information contained or believed to be contained in the documents sought, but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused. *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991). The subpoena must be sought in good faith and not as a "fishing

expedition." *Arditti*, 955 F.2d at 347. Requesting entire files instead of specific documents is indicative of a fishing expedition. *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984).

Before addressing the individual requests for production, the Court tackles the arguments on the merits advanced by the parties. First, whether defendants received authorization from this Court for pre-trial production of the documents is of no moment. Addressing this argument would be no more than an exercise in futility as the SDTs are now squarely before this Court on the government's motion to quash.

And whether the government has standing to move to quash the SDTs is also of no moment as courts have consistently held that this Court has an independent obligation to assess each subpoena for complaince with the *Nixon* factors. *United States v. Richardson*, No. Crim. A. 13-86, 2014 WL 6475344, at *2 (E.D. La. Nov. 18, 2014) (finding "defendant's [standing] argument to be without consequence [because] regardless of whether the government has standing, the Court is obligated under Rule 17 to assess each subpoena for compliance with the *Nixon* factors.") (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)); *United States v. Hankton*, No. Crim. A. 12-1, 2014 WL 3385126, at *2, n.1 (E.D. La. July 9, 2014) ("even without the government's opposition, the Court is obligated under Rule 17 to examine whether the request complies with the *Nixon* factors.") (citing *Bowman Dairy Co.*, 341 U.S. at 221); *United States v. Hankton*, No. Crim. A. 12-1, 2014 WL 688963, at *2, n.1 (E.D. La. Feb. 21, 2014) ( "The Court notes that although … subpoenas were issued to … members of the media, Hankton raises no challenge to the Government's standing to move to quash…. Regardless, the Court is obligated under Rule 17 to assess each subpoena for compliance with the Nixon factors.") (citing *Bowman Dairy Co.*, 341 U.S. at 221).

And now as to the disputed subpoena requests,

Here, the motion is moot as to Requests for Production ("RFP") Nos. 1, 3, 5, 9, 11-15 (Becnel), RFP Nos. 3, 7, 17, 23, 25, and RFP Nos. 9, 10, 13, 15, and 18 (Vaccarella).  The government has withdrawn its motions as to these RFPs.

The motion is also moot as to RFP No. 16 (Becnel) as she no longer seeks the requested documents.

The motion is also moot as to RFP Nos. 20, 22, 23, 29, and 30 (Williams) as he has withdrawn them.

With regard to RFP No. 2 (Becnel), the Court sustains the motion as to the personal information on the visitor log and the visitation forms.  With regard to the attorney log, the GED Program log, and the Church log, the motion is moot as the government has withdrawn the motion as to said logs.

With regard to RFP No. 4, the Court finds that the government has adequately responded to it, having produced the sought-after reports and inter-office correspondence forms regarding Henry. The motion is thus moot as to this RFP.

With regard to RFP No. 6 (Becnel), the government has produced all recordings of telephone calls of Henry that the SBPSO provided to it.  The motion is thus moot as to this request.

With regard to RFP No. 7 (Becnel), the Court sustains the motion as to any and all records of inmates residing in SBPP with Henry including their dorm assignments except insofar as the government has produced the inmate head count forms.  "Any and all records" is overbroad, language that would require the production of many irrelevant and confidential documents concerning other inmates.

The motion is also moot with regard to RFP No. 8 (Becnel) as the government – after redaction – has provided all of the documents regarding a DCFS caseworker's visit to Henry on March 21, 2014.

The motion is further moot as to RFP No. 10 (Becnel) as the Court finds that the governemnt has adequately responded to it.

With regard to RFP No. 17 (Becnel), the Court denies the motion. The RFP seeks a "list of information" that the SBPP and the SBPSO provided to the federal government. It does not seek the information itself.

The Courts also finds that the government has sufficiently responded to RFP No. 18 (Becnel).

With regard to RFP Nos. 6, 10, and 11 (Williams) and RFP No. 13 (Vaccarella), the Court sustains the motion. These requests are highly overbroad as they seek information related to any other female inmate – *i.e.*, not a party to this or any other litigation – at the SBPP. These requests are a fishing expedition.

And lastly, the Court finds that the government has adequately responded to RFP No. 14 (Williams).

## V. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Becnel's Ex Parte Motion for Issuance of Subpoena *Duces Tecum* and Incorporated Memorandum in Support [Doc. #45] is GRANTED IN PART and DENIED IN PART as outlined above.

**IT IS FURTHER ORDERED** that the Government's Motion for a Protective Order [Doc.

#51] is GRANTED IN PART and DENIED IN PART as outlined above.

**IT IS FURTHER ORDERED** that the Government's Motion to Quash Subpoena *Duces Tecum* Issued to the St. Bernard Parish Sheriff's Office and for Disclosure of Subpoena *Duces Tecum* [Doc. #61] is GRANTED IN PART, DENIED IN PART, and DISMISSED AS MOOT IN PART as outlined above.

If they have not already done so, the parties shall comply with this Order **no later than fourteen (14) days from the below date.**[3]

New Orleans, Louisiana, this 11th day of April, 2016.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] The Court notes that in a supplemental letter to the Court, the government asserts that it produced many of the requested documents – including the witness statements and *Jencks* and *Brady* materials – to defendants on February 12, 2016.