

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 15-289 |
| v. | * | SECTION: "B" |
| DEBRA BECNEL | * | |

\* \* \*

## FACTUAL BASIS

The United States and defendant DEBRA BECNEL ("BECNEL") stipulate and agree to the below facts, and further stipulate that such facts provide a sufficient factual basis for her plea of guilty to Count 4 of the Indictment's charge that she knowingly and willfully made materially false statements to a federal agent in a matter within the jurisdiction of a federal agency within the executive branch of the United States, in violation of Title 18, United States Code, Section 1001(a)(2). The following facts are offered for the purpose of establishing a sufficient factual basis to support the guilty plea and therefore do not describe all the details of the offense.

The St. Bernard Parish Prison ("SBPP") was a correctional facility in the Eastern District of Louisiana responsible for the custody, control, care, and safety of inmates, including pretrial detainees, who were held in custody following an arrest, but who had not been convicted of a crime. Nimali Henry was a nineteen-year-old pretrial detainee in the custody of the SBPP from March 21, 2014, through April 1, 2014. Henry suffered from serious medical conditions, for which she was under a physician's care, and required medical treatment, including regular medication. While incarcerated at the SBPP, Henry did not receive medication or treatment for her serious medical conditions, she was not evaluated or treated by a physician, and she was not taken to a hospital. As a result of not receiving medical treatment, Henry died on April 1, 2014.

AUSA *[initials]*
Defendant *[initials]*
Defense Counsel *[initials]*

During the time of Henry's incarceration, BECNEL was an SBPP correctional officer with the rank of deputy. BECNEL was a "POST-certified" correctional officer, having successfully completed the Louisiana Peace Officer Standards and Training Council Jail & Corrections Training course, which taught that inmates had a right to necessary medical care, and that correctional officers were required to take reasonable measures so that inmates showing signs of illness or injury received medical care. BECNEL and the other SBPP correctional officers—including Deputy LISA VACCARELLA, Captain/Medical Officer ANDRE DOMINICK, and Corporal TIMOTHY WILLIAMS—were responsible for the custody, control, care, and safety of inmates, including pretrial detainees, at the SBPP.

During the time of Henry's incarceration, BECNEL, as an experienced SBPP officer, knew the following facts about inmate medical issues. SBPP officers had various means of addressing inmate medical issues including: delivering inmates' written medical requests to the medical department officer; alerting supervisors and/or the medical department officer of inmates' medical issues; announcing over the radio "code blue" (a signal for all available officers to report to the location of a medical emergency); and calling an ambulance service. Inmates selected by the medical department officer were permitted to meet with a physician who visited the SBPP once per week. Because a physician reported to the SBPP only once per week, an inmate usually could only receive access to a physician if the SBPP called the ambulance service and the ambulance then brought the inmate to a hospital. When the ambulance service was called, responding emergency medical technicians ("EMTs") would examine the inmate and determine whether the inmate should remain at the SBPP or should be brought to a hospital for treatment or further evaluation. If EMTs determined that an inmate should be brought to the hospital, SBPP officers were to comply with that determination. The SBPP's policy was for either one female officer or

2

AUSA _CM_
Defendant _[initials]_
Defense Counsel _[initials]_

two male officers to accompany a female inmate to, from, and at, the hospital. To reduce the impact on staffing, it was generally preferable for a female officer to accompany a female inmate. Because some officers disliked accompanying inmates to the hospital, and because bringing inmates to the hospital reduced jail staffing, at times officers were reluctant to call the ambulance service.

Henry entered the SBPP on the evening of Friday, March 21, 2014, and the following morning was assigned to D-1, which was a dorm room that housed female inmates. During Henry's incarceration, Henry and other inmates in D-1 informed correctional officers, including BECNEL, that Henry was seriously ill, had a life-threatening physician-diagnosed medical condition, and needed medical treatment, including physician-prescribed medication, without which she would become more seriously ill. During her interactions with Henry, BECNEL had no difficulty understanding Henry. Henry was articulate and spoke politely and clearly.

After her shift had ended on the evening of March 29, 2014, BECNEL went to D-1 in response to inmates' requests for medical assistance for Henry. Corporal TIMOTHY WILLIAMS and Deputy LISA VACCARELLA went to D-1 shortly thereafter, with WILLIAMS entering D1 and VACCARELLA standing just outside the open door to D-1. In the presence of BECNEL, WILLIAMS, and VACCARELLA, Henry and Henry's dorm mates stated in substance that Henry was ill, needed medical treatment, and might die without treatment. At this time, BECNEL left Henry in the custody of WILLIAMS and VACCARELLA, who were at the starts of their shifts.

On the morning of March 31, 2014, BECNEL reported to D-2 in response to inmates' requests for medical assistance for Henry. BECNEL saw that Henry was sitting on the floor of the shower with bodily substances on and around her.

On the evening of March 31, 2014, at the SBPP, BECNEL and Captain/Medical Officer ANDRE DOMINICK discussed Henry. At that time, Henry was held in an isolation cell. During

3

AUSA *CM*
Defendant
Defense Counsel

their discussion, DOMINICK stated in substance that Henry had a serious blood disease and that DOMINICK had not obtained the medication that Henry was supposed to take to treat the disease.

On August 11, 2014, in the Eastern District of Louisiana, BECNEL met with special agents of the Federal Bureau of Investigation ("FBI"), an agency within the executive branch of the United States. BECNEL knew that it was unlawful to make false statements to the agents, knew that the agents were investigating the circumstances of Henry's death, and knew that anything BECNEL had heard about Henry's need for medical attention during her incarceration was a material matter, meaning that it had a natural tendency to influence, or was capable of influencing, decisions of the FBI.

At the meeting, BECNEL, knowingly and willfully made materially false statements in response to questions from the FBI. Specifically, BECNEL falsely told the FBI special agents that Henry never told BECNEL that Henry needed medical attention. BECNEL also falsely told the FBI special agents that she did not have any conversations with inmates in Dorm D1 regarding Henry having a serious medical condition until after Henry died. In truth and in fact, as BECNEL then well knew, her statements were false, both in that Henry told BECNEL that she needed

4

AUSA C̶M̶
Defendant
Defense Counsel

medical attention and that inmates in Dorm D1 had spoken to BECNEL about Henry having a serious medical condition before Henry's death.

_____  1/7/20
CHANDRA MENON            Date
Assistant United States Attorney


_____  1/7/20
TRACEY KNIGHT            Date
Assistant United States Attorney


_____  1/7/2020
CHRISTINE M. SISCARETTI  Date
Trial Attorney
Civil Rights Division
U.S. Department of Justice


_____  12/18/2019
GUY WALL                 Date
Counsel for Defendant


_____  12/17/19
DEBRA BECNEL             Date
Defendant

5